May it please the Court, I have two issues, I believe, that are in this. You speak up a little, I can't hear you. I'm sorry. My name is Dean Shenander. I represent Ricky R. Appellant in this matter. I believe there are two issues before the Court that can be summarized rather quickly. One, there was an abuse of discretion when the judge did not allow for a continuance of the motion for summary judgment. Even though the Court had ordered that the deposition could be taken, however, that order was not entered into the record until the day of the due date, which the opposition was due for the MSJ. The Court decided that a continuance was not allowable because the appellant, then the plaintiff, Ricky R., had not actually scheduled a deposition within a short four-day period after the order was issued to allow for the deposition of the named defendant, Mr. Fisher, Sergeant Fisher. Yes, that's all that had happened. You would you surely would be correct, but it goes back way before that to depositions that, well, to the declination to accept the stipulation by the, offered by the defendants to take Fisher's deposition and to schedule it in a timely manner a couple of, two or three months, two months, I think, before. This all went down in having scheduled the depositions of the, of the Alhambra Police Department personnel and then canceling them on the day they were scheduled. So how could the district court have really messed up by saying that it wasn't, that discovery wasn't diligently pursued? Well, the discovery period actually hadn't expired yet. That's true. So you're allowed a certain amount of time to conduct discovery. I believe it was, I was, my firm was not the firm in charge of handling Ricky R.'s case up until, well, actually we began handling it at this point. However, at that point, I believe that it was likely a strategic decision to wait until after the motion for summary judgment was submitted so that they could take the deposition of the named defendant, Sergeant Fisher. It was still within the discovery period. However, it wasn't as easy as it normally would be to schedule a deposition because Sergeant Fisher was actually incarcerated behind bars. He never answered, actually, or appeared for the court. So their default proceedings never went forward. However, he was never represented. So getting the deposition of Sergeant Fisher behind bars without representation posed in itself a lot of struggles to set that deposition. When the MSJ was ultimately served, Ricky R. and his counsel at the time moved diligently to secure the deposition of Sergeant Fisher. What could you get from his deposition that you would need to defeat this motion? Well, one of the things we could get from Sergeant Fisher is whether or not he was on duty. Isn't that available through the police department? Well, there's two things that we could get from Mr. Fisher that would likely not be available from the police department. One, we don't know where Sergeant Fisher would have been while he was on duty. When he's roving in his car driving around, the police department arguably doesn't know. The best way to learn whether or not he was on duty is to ask him directly, were you on duty on these days at this time? Well, like I say, you can go to the police department and say July 4th, 2006, was he on duty, yes or no? What hours was he on duty? What difference does it make if he, you know, where he was driving as to whether he was on duty or not? Well, I believe that that question is best answered. You could actually go through the police department and look, I guess, through his personnel files or his log-in records or whatnot. However, there's a privacy issue there where, okay, if they assert an objection, then you've got a different problem. But, I mean, it seems like that stuff would be readily available from the custodian of the police records. I'm trying to figure out what you would get from him, from Sergeant Fisher, that you would need to defend the motion. And if it's the days you're on duty, that doesn't seem to cut it because you can get it elsewhere. So what else? Your Honor, I can appreciate your question. However, I don't believe that that's the standard. There are many avenues of discovery available to any party. Choosing to go to the source and actually take the deposition of a named defendant in the case is one avenue. Going and getting records through the custodian is a different avenue. However, there's a lot more you can learn from Sergeant Fisher himself when you're sitting there looking at him eye-to-eye across the deposition table or even in front of a video deposition where you're actually taking his video. That would likely have been the case since he was incarcerated and producing him for trial might have been difficult. Those kind of things and his mannerisms and how he actually answered the questions and whether or not he was looking up or down or all of those indications that TV has now taken quite a liberty with to him. I don't see whether he looks up or down would help you in a summary judgment motion. Well, you could have, we could have, Ricky R., I guess, through his counsel, could have attached the video deposition testimony of what Mr. Fisher, Sergeant Fisher, was doing during the deposition. I've done that before, actually. I've attached the video as part of a transcript and had that as part of our evidence for the judge during his ruling on different motions. That would bear on whether he was working, whether he was acting under color of state law? Well, I believe that his, that does raise a question of credibility and whatnot. However, Sergeant Fisher, that avenue of discovery was taken away from Ricky R. Sergeant Fisher knows things that only Sergeant Fisher knows. One of the things he knows is whether or not he was on duty. The second thing, which I was trying to get to, was whether or not he spoke with anybody from Alhambra. He made obvious threats to Ricky R., which was testified, which is undisputed, that he would affect Ricky's, R.'s future with the Alhambra Police Department. Since he was in the Explorer Program, only Sergeant Fisher would know. You mean Baldwin Park? What? You mean Baldwin Park? I'm sorry. Yes. Baldwin Park. Only Sergeant Fisher would know who he spoke with over at Baldwin Park and how he actually, if he did, further those threats. Sergeant Fisher is the only person, aside from the people we talked to, there's no one else who would know who he talked to aside from him. That would have actually been how he furthered out his threats to basically influence Ricky R.'s future. Third, whether or not he actually ever went into Alhambra while he was on duty to do anything related to Ricky R. Those are the three most important things, based on time, that we would have gotten from Sergeant Fisher. Number one, whether or not he was on duty. Number two, whether or not he followed through with any of his threats or spoke with anybody from Baldwin Park. And number three, whether or not he ever was in Baldwin Park or ever there or associated with any of the Explorer Programs for Ricky R. Those would have raised a triable issue of fact regarding the color of law. I'm not exactly sure how much time I have, but I'd like to reserve. You've got about seven minutes. Oh. Well, I'll reserve. It doesn't mean you have to use them. Are there any other questions, actually, at this point, Your Honors? I don't think so.  Certainly. Thank you. Mr. Sorensen. Hi, police and court. My name is Brian Purick of Burke, Williams & Sorensen. We represent the City of Alhambra and the Alhambra Police Department in this case. Will you speak up, please? Yes, I'll be glad to. We believe that there are some procedural issues in the case that the court's already addressed in questioning to appellant's counsel with regard to discovery. The one that was focused upon had to do with what they were going to learn from Michael Fisher. I think we need to look at the big picture here. We have a case here where not only did they have an inadequate showing of what the facts were going to be or draw the next connection on how those facts were going to defeat the motion for summary judgment that the city filed, but even if they overcame that burden, and I remind the court that it's an abuse of discretion standard when you look at the trial court's actions with regards to making 56-F decisions. Let's go on to the next question. Did they diligently pursue discovery? Because even if they presented facts and showed you how they were going to defeat the city's motion for summary judgment, were they diligent? No. The answer is clear. This complaint was filed in April of 2007. Motion for summary judgment is filed in December of 2007. They had several months to conduct their investigation and their discovery. What discovery did they initiate prior to the city's filing of its motion for summary judgment? None. Well, the discovery period was still open, though, right? It was expiring in February of 2008.  Sure, it was still open. We don't measure diligence, at least I don't believe we do, Your Honor, based upon when the discovery cutoff is. Well, I mean, if they say you've got until January 1st, whatever it was, it's kind of like, you know, April 15th to file your tax returns. You can file it in February or you can file it on midnight. You're still within your time. I don't think that's the law, Your Honor. Why is that? Because the law requires them to diligently pursue discovery. We've cited several cases in our brief where discovery was not pursued within four months of the filing of the complaint, within 10 months of the filing of the complaint. The measure is not when the discovery cutoff is. The measure is whether they diligently pursued discovery from the date of filing their complaint. They did not do that. As a matter of fact, let's ask this question. Did they file any written discovery upon the city, any interrogatories, any request for production of documents? The answer to those questions is no. Did they take any depositions? No. They sent one deposition, the deposition of the Alhambra police officers, and as the court noted upon questioning earlier, they canceled those the day before. December 19th, they call up in the afternoon to cancel the depositions that are on December 20th because they're too busy, they've got something else to do. They don't even bother to reschedule those depositions. And as the court also noted with respect to the deposition of Officer Fisher, which counsel has told you was so critical and so important, what does the record show, this is undisputed, that the city offered in September of 2007 to stipulate to the deposition of Officer Fisher? What response did we get from the appellant with regard to that offer to stipulate? None. This is not a disputed fact. They don't say, yes, we responded two weeks later or a month later or two months later and we said we'd accept your stipulation. They ignored our offer. And then you did stipulate to a deposition that the judge ordered. In December. Now, if it's stipulated to and the judge orders it, what logic is there not letting it go forward? The logic is that they hadn't diligently pursued discovery. Then why did the judge order it? Well, first of all, it wasn't the judge that granted the motion for summary judgment that granted the order. Who granted the order? It was Judge, I don't have her name at the tip of my. Whatever it was, it's the judge and it counts. It was. Well, certainly I'm not saying that the order wasn't made, but the point being that they had, as this Court noted earlier in questioning, an opportunity to earlier take that deposition. The fact that we're on the eve of the expiration of a discovery cutoff does not excuse their lack of diligence here. They were not diligent because they didn't do anything. They didn't serve, as the Court pointed out earlier. Couldn't you have gotten information about whether Officer Fisher was on duty through some other means of discovery? The answer is yes. Did they? No. So the point being that they had an obligation to diligently pursue discovery and they didn't do it. The city did diligently pursue discovery. We took the deposition of Rick Yar. The city is entitled to move forward with the case, which is what we did. The plaintiff had an obligation to move forward with the case, which is what they did not do, so that the trial court's decision that they were not diligently pursuing discovery is more than adequately supported by the record. And as I should point out, as I did in a previous comment, the standard here before this Court is whether the trial court abused its discretion in denying the Rule 56-F request. Clearly, on that standard, we satisfy that requirement. I'm ready to move on beyond the procedural unless there's other questions. Okay. Going to the substance of the issue, substance of the case, I would point out that one of the documents that I find to be very important in this case is the 10-page detailed analysis that you have from the trial court in granting this motion for summary judgment. What the trial court points out in that order is that these facts are basically undisputed, the facts that are in this trial court's opinion, with respect to the circumstances under which Officer Fischer met Rick Yar, the circumstances surrounding their relationship, the fact that it was ongoing for this 11-month period and nobody said anything to anybody other than Fischer and Rick Yar between themselves, no evidence that was disclosed to others. These are all undisputed facts. There's nothing in the appellant's brief to indicate, well, you know, we disagree with this fact or this fact. All those facts that are in the trial court's opinion are undisputed, and we believe that's very important for a lot of reasons. Number one, it shows that there was no color of law with respect to the conduct of Officer Fischer. Number two, it shows that there's no custom or policy or practice by the City of Alhambra. Now, I want to spend just a moment talking about the issue of this allegation regarding the molestation of the stepson in 2003, because I'm reading things in the appellant's brief which is simply not true. They say that the city knowingly allowed a pedophile to continue employment with the city and that they knew this before the relationship with Rick Yar started. Now, that's simply not true. We know from the record, and it's before the court in the excerpts that have been submitted to you by the appellant, that the city conducted a six-month investigation into those allegations regarding the alleged molestation in 2003. There's a 65-page report in the file that's under seal that's before you that shows that the Alhambra Police Department diligently pursued that investigation. There's a further conclusion report or recommendation report from the captain that's in that file that goes through the investigation and makes a recommendation at that point that there's insufficient evidence. There was no cooperation by the victim on that. The mother had said that she suspected that those that were reporting the incident were lying or had credibility issues. The district attorney looked at the same evidence and refused to prosecute for all of those reasons, and yet we hear from the appellant in their brief that the city knowingly allowed this pedophile to continue employment. Now, that's simply not the case. There was diligence. What else did we have? We had a pre-employment review and background investigation. We had a 23-year officer with no history other than this reported incident in 2003 that was thoroughly investigated. So where is there evidence that there was some custom and policy here under Minnell on the part of the city under 1983? Now, there were seven causes of action in this complaint. The sixth cause of action is the 1983 one, and that is the one that the Court ruled on and remanded the other six causes of action to State court. So that's our procedural posture on this case. Let me ask you a hypothetical question. I'm going to make up a fact, so stipulate that this is not what happened, but we don't know what happened, but I'm making this up. Suppose Officer Fisher were to have called another police department and said, this is Sergeant Fisher of Alhambra PD, and you're going to be getting an application from a guy named Ricky Yar, and Ricky Yar is bad news, we've had problems with him in Alhambra, and I urge you not to hire him. If those were the facts, would he have a case for saying that he was acting under color of state law? Well, as you say, that is hypothetical and it's highly speculative, but let's go beyond that and assume that that did happen. My answer to the question would be no, I don't think that's acting under color of state law. I think that when you're acting under color of state law, there's got to be something related to his duties. The fact that he would unilaterally, arbitrarily, and without any authorization from anyone, spontaneously make some kind of a statement like this to this other department, clearly under the cases, and I think you see them in our briefs, is not going to be sufficient to bring this under color of state law. I don't see where the cases really deal with this scenario. Well, every case is different, Your Honor. I think we don't ever find two cases with the exact same facts. I don't see a case that comes close to the one I just posited. Well, I think the cases talk about what facts bring you within the color of law and what don't, and I think if we matched up which ones bring us under color of law, I mean, we have one case in there where a police officer picked up a woman in his patrol car, in his uniform, with his handcuffs, with his gun, and forced himself on her sexually, and that was found not to be under color of law. So I can't say that we've got a case where there was an officer in any of the briefs that called up another police department and said, don't hire this person because of some anger resulting from their sexual encounter, and that it had gone bad and that's why he does this. No, we don't have the spotted cow, as one of my partners used to say. We don't have a spotted cow here. But what we do have are a lot of other cases that do apply the standard for color of law, and we don't think that those standards, as they've applied under the Anderson test and all the rest, would give rise to that being color of law. And even if that was under color of law, they've also got to establish that it's a custom of policy. And where's their evidence of that? They have nothing. And what are you supposed to do when you file a lawsuit? Are you supposed to sit back and do nothing? I don't think so. I think you're supposed to diligently pursue it. The city diligently pursued this case. The plaintiff didn't. Now, are they going to get rewarded because in the ninth inning, just before discovery, cutoff is about to expire, that they rush into court and try and get a stipulation and say, well, you know, we need to take this deposition now. Well, they got a stipulation because you signed it. I understand that. Yes, we did. We were cooperative. We were reasonable. We were diligent. That's a word that means nothing to the plaintiffs in this case. How much trouble is it to serve a set of interrogatories? How much trouble is it to set a request for production of documents? Give us the records to show whether this officer was on duty. What does that take, an hour? They had ten months, and they did nothing. So they should not be rewarded for doing nothing and rushing to the court and begging for opportunities to do discovery that they never did during the time that the case was pending. We don't measure diligence from the discovery cutoff date back up 30 days and say when they're rushing to do discovery because the clock's about to expire and it's going to be end game. We look at it from the beginning of the game, if you will, to continue with my metaphor. What did they do in the first quarter or the second quarter or the third quarter? No, they wait until the two-minute drill, and that's when they start to rush around. His argument is the game's not over until the whistle blows. It is not, but that doesn't mean that you don't sit there on the sidelines for three quarters of the game plus and do nothing. The other team's going to run up the score, and that's what happened here. The city exercised diligence. We took depositions. We did what we were supposed to do. We offered to stipulate to take Officer Fisher's deposition. And one of the things they said I thought was interesting, that he was incarcerated. How difficult is it to find a person who's incarcerated? Why couldn't they say, all right, let's take his deposition? Why didn't they say to the city in September of 2007, we're going to take you up on that stipulation, city, and let's go get Officer Fisher. But, gee, where is he? It's not hard to find. I think we're repeating ourselves. You're right. That's probably time to stop. Thank you, Your Honor. Thank you. Mr. Chandler. Thank you. What does the green light mean up top? It means go. Okay. Thank you. There are a few things I'd like to address in rebuttal. And I'd like to first address the ‑‑ I'd actually like to address your question, whether or not that would be acting under color of law. If a police officer from one department called a police officer from another department and actually stated whether or not a potential applicant within that department is a bad apple. I think that's about what you had stated. And I believe that would be acting under color of law. Are you familiar with Johnson v. Knowles? Actually, it is in the moving papers, Your Honor. Yeah. I just wondered how you distinguish that case, which essentially that happened. And the whole thing was that the public action or state action, in fact, I believe that Johnson v. Knowles, are we talking 113 Federal 3D1114? You know what? I just don't carry those sites in my head. Fair enough for the record then. I believe that the holding in that case was that an employee must be acting in his official capacity or exercising his responsibilities pursuant to state law. And I would say that that question and that hypothetical actually do show that. It's one police officer talking to another police officer. We all know that there's an old boys club between police officers and they actually have an incredible brotherhood between the two. And when one cop, especially a sergeant, he's not even a low-level, entry-level guy, he's a sergeant with responsibilities over supervising people, when he calls directly to talk to another police officer in a nearby district and says, this person, this applicant, I have personal knowledge of him, I've seen him in the Alhambra area, and he is a bad apple or he's not going to be a good police officer, and he directly influences that applicant's peer Ricky Ars, assuming the hypothetical fits to our case. His future with the precinct, that is him acting within his responsibilities as an officer, simply put, just to protect the public. Is there any evidence that he did that, that Fisher did that? No, that's the evidence we were trying to get through his deposition. You never found anybody at the other police departments who said, I got a call from Fisher, anything like that? No. We had no idea who to ask at the police department, and they were all represented anyway, so we couldn't actually ask them directly. The person to ask who we talked to really is Fisher, and that would have been one of the main issues we would have gotten from the court-ordered deposition. I suppose if Fisher says, I never did that, then you're sunk, that's it? Well, I'm not saying we would have won MSJ. I'm saying that that discovery was likely plausible based on Fisher's threats to Ricky Ars, which are undisputed in the record. It's undisputed that he made threats to Ricky Ars about his future and that he would influence Ricky Ars' law enforcement career with the Baldwin Park Police Department or any police department. If we had found out from Fisher that that's what happened, based on those threats, it's quite possible he could have at least been keeping the water neutral or at a lukewarm stage, not saying anything positive, not saying anything negative. We don't know what he said. We don't know if he said something. However, if he did say something, that would show that he was acting under color of law, and that would defeat the MSJ, and that would put Ricky Ar in front of a jury. That's what we're saying here. That's why we think it was an abuse of discretion. There's two issues here. One, we're trying to say the judge erred when he granted the MSJ by no color of law, and two, that he didn't give us even until the end of discovery to figure this out. The motion cutoff date was sometime after February 2008. Appellees here have stated that the motion or the discovery cutoff was sometime in February of 2008. They filed their MSJ in the beginning of December of 2008. It's set to be heard sometime in January. We go in two months prior to discovery cutoff, well within the time period. Motions can be set any time after that period. It seems that if you had allowed him two months or 60 days just to do it, that would have given him the opportunity. Maybe the same result would have happened. Maybe it wouldn't have. However, he never got the chance to actually depose the named defendant who, while I keep hearing that appellees actually stipulated to his deposition being taken, well, they stipulated to it. He's actually a third party at that point. He was unrepresented. He never answered. He was in default. Never procedurally, officially in it, but I guess he's in it today. I don't know. Those papers haven't been filed at this point. Regardless, he wasn't represented. To actually take the deposition of somebody who's incarcerated, you have to get a court order. RICI-R did that. They did stipulate. They did agree to it. They didn't object at that point and say, hey, you haven't been diligently pursuing discovery. No, they signed the stipulation and went in front of the court. The court actually signed the order. And then the other judge, who actually ruled on the motion for summary judgment and denied the continuance, even though it could have been a very short continuance, said the reason that he didn't do it was because they didn't schedule the deposition within the four-day period following December 14th, by December 18th. December 14th was the day his opposition was due. That's when the court order said you can take the deposition. So now RICI-R had to take a chance. Do I go for the deposition or do I file my opposition? He tried to do both. Procedurally, if you blow the opposition date, it can be a waiver. And then whatever they say is true, then he loses anyway. So he files the opposition with what he has. He requests a short continuance so that he can go get this certain information, so that he can prove color of law and whatnot. It wouldn't have taken the court that much to give him 60 days. At least give him until February of 2008 when the discovery cutoff was. That's all he was asking for. He was just asking to take the court order deposition of the named defendant who wasn't represented, who was incarcerated, to get those specific facts that only Fisher would know. He couldn't have gone to Alhambra and asked him who Fisher had talked to. He could have only gone and talked to all the people that Fisher had talked to. However, that's a pure guess. That calls for absolute speculation on who he did. The only person that has that information is Fisher himself. And that's what he was trying to do.
judges: Hall, Rymer, Silverman